Matthew NOBLE, Petitioner,

v.

U.S. PAROLE COMMISSION,
Respondent.

No. CIV.A. 95–188(SS).

United States District Court,
District of Columbia.

Dec. 22, 1998.

Reita Pauline Pendry, Beverly Gay Dyer, Federal Public Defender for D.C., Washington, DC, for Matthew Noble.

John Robert Fisher, John Michael Facciola, Robert Daniel Okun, U.S. Attorney's Office, Washington, DC, for United States Parole Commission.

David Adam Reiser, D.C. Public Defender Service, Washington, DC, Jonathan S. Franklin, Hogan & Hartson, L.L.P., Washington, DC, for Federal Public Defender Service, movant.

Mary Larkin Wilson, Office of Corporation Counsel, Washington, DC, for District of Columbia, movant.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter is before the Court on remand from the United States Court of Appeals for the District of Columbia Circuit for the purpose of determining the retroactive effect of the decision of the D.C. Court of Appeals in *United States Parole Commission v. Noble*, 711 A.2d 85 (D.C.1998) (en banc), *reinstating*, 693 A.2d 1084 (D.C.1997) (hereinafter *"Noble IV"*).

The D.C. Circuit remanded the case in June 1998. This Court held a hearing on December 9, 1998. Upon the written and oral arguments presented, and for the reasons set forth below, this Court concludes that Matthew Noble is subject to the application of § 24–431, as announced by the D.C. Court of Appeals in *Noble IV*.

### I.  Background

#### A.  Procedural History

This case arose out of a disparity between the way the D.C. parole authorities, the District of Columbia Board of Parole ("DCBP"), and the federal parole authorities, the United States Parole Commission ("USPC"), were treating D.C. defendants who had served time on parole and subsequently had their parole revoked.[1]  Prior to April 23, 1998 (the

---

1.  Although the District of Columbia has primary    responsibility for the incarceration and supervi-

date *Noble IV* was decided) D.C. granted credit to defendants for the street time and the USPC did not grant credit for street time.

This disparity was based on the differing interpretations of the DCBP and the USPC regarding two D.C. statutes. D.C.Code § 24–206(a), enacted in 1932, provides that if a prisoner's parole is revoked, the "time a prisoner was on parole shall not be taken into account to diminish the time for which he was sentenced." *Id.* D.C.Code § 24–431, enacted in 1987 as the Good Times Credit Act ("GTCA"), provides that "[e]very person shall be given credit on the maximum and minimum term of imprisonment for time spent in custody or on parole as a result of the offense for which the sentence was imposed." *Id.* Section 24–431 did not repeal the 1932 statute and did not specify whether it applied to prisoners whose parole had been revoked.

The District interpreted § 24–431 as implicitly overruling § 24–206(a) and began granting credit to offenders towards completion of their sentences for all parole time they had served prior to revocation. On February 19, 1988 the D.C. Department of Corrections issued a regulation to that effect. *See* 28 D.C.M.R. § 601.7 ("Revocation of parole shall not result in a loss of credit, for the time spent on parole, toward service of the sentence on which parole was granted."). The USPC read the two statutes as consistent and, pursuant to § 24–206(a), denied offenders credit for time spent on parole prior to revocation. Consequently, between 1987 when § 24–431 was enacted, and April 23, 1998 when the D.C. Court of Appeals announced the definitive interpretation of the law, D.C. offenders who had their parole revoked received different parole calculations based on whether they were under the supervision of federal or District authorities.

In January 1995 petitioner, Matthew Noble, challenged the determination of the re-

spondent, USPC, to deny him credit for time he spent on parole prior to revocation of parole. He filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. On May 31, 1995 this Court granted Noble's petition, holding that § 24–431 required the USPC to credit Noble for the time he spent on parole under his D.C. sentence during the period from March 11, 1988 through May 28, 1993 (a total of 1,479 days). *Noble v. United States Parole Commission,* 887 F.Supp. 11 (D.D.C.1995) ("*Noble I* ").

The USPC appealed that decision and on May 13, 1996 the U.S. Court of Appeals for the District of Columbia Circuit, noting that the D.C. Court of Appeals had not resolved this issue, certified to the D.C. Court of Appeals the question of whether the USPC properly refused to credit Noble for the time he spent on parole prior to his parole revocations. *Noble v. United States Parole Commission,* 82 F.3d 1108 (D.C.Cir.1996) ("*Noble II* "). On April 17, 1997 the D.C. Court of Appeals answered the certified question in the affirmative, holding that § 24–431 did not impliedly repeal § 24–206(a), i.e. that the interpretation of the USPC was correct. *United States Parole Commission v. Noble,* 693 A.2d 1084 (D.C.1997). The D.C. Court of Appeals granted Noble's petition for a rehearing en banc and on April 23, 1998 reaffirmed its prior decision eight to one. *United States Parole Commission v. Noble,* 711 A.2d 85 (D.C.1998) (en banc), *reinstating,* 693 A.2d 1084 (D.C.1997).

In its decision the D.C. Court of Appeals flagged, but declined to answer, two questions: (1) whether Noble had a legitimate reliance interest in the District's interpretation of the statutes, i.e. whether *Noble IV* should be applied retroactively to Matthew Noble; and (2) "whether there should be any limitation on the class of prisoners the ruling should reach, i.e., the issue of retroactivity/prospectivity." *Noble III* at 1103–04. On June 16, 1998 the D.C. Circuit remanded the

---

sion of individuals who violate District of Columbia criminal statutes, *see United States v. District of Columbia,* 897 F.2d 1152, 1156 (1990), the federal government also exercises control over certain D.C. prisoners. This is because some offenders are housed at federal correctional institutions due to overcrowding at certain D.C. facil-

ities. *See id.* When a D.C. prisoner is released on parole from a D.C. facility, the parole is supervised by the DCPB. When a D.C. prisoner is released on parole from a federal facility, the parole is supervised by the USPC in conformity with D.C. law. *See* D.C.Code §§ 24–206(b), – 209.

case to this Court for further proceedings in light of these unanswered questions.

### B. Factual History

Although the factual history is set forth in the prior opinions, a brief review of the facts is necessary for a full understanding of this case. On December 8, 1978 Matthew Noble was convicted in the United States District Court for the District of Columbia of unlawfully distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). He was sentenced by the Honorable Harold H. Greene to three years probation. Although this was his only federal conviction he remained under the supervision of the federal authorities until his release in 1995.

On December 17, 1980 Noble was arrested on a misdemeanor drug charge. This arrest along with his failure to adhere to drug testing requirements constituted a failure to comply with the conditions of his probation and on May 18, 1981 his probation was revoked. He was sentenced to a term of imprisonment of one year and one day, to be followed by a special parole term of two years. He served approximately seven months in a federal prison and began serving his special parole term on December 18, 1981, again under the supervision of the federal authorities.

On November 15, 1982 he was convicted in D.C. Superior Court of distribution of a controlled substance. He was sentenced to one to three years in prison to run concurrently to any other sentence, and was again incarcerated in a federal facility. As a result of this conviction Noble's parole was revoked on March 19, 1983 and he was returned to federal custody. On September 21, 1984 Noble was again released on parole.

Noble was convicted a second time in D.C. Superior Court of distribution of a controlled substance and on September 13, 1985 was sentenced to 30–90 months imprisonment. The U.S. Bureau of Prisons ("BOP") aggregated Noble's D.C. sentences with the remaining portion of his federal parole term, which resulted in an aggregated sentence of nine years, two months and seven days (ninety months of which was District time and twenty months of which was federal time). The BOP calculated a new parole eligibility date of July 13, 1987 with a full-term expiration date of March 20, 1994.

On March 11, 1988 Noble was released for the third time on parole with 2,197 days of his sentence remaining. Although a majority of his remaining sentence pertained to his D.C. offenses, he remained under the jurisdiction of the USPC based on his release from a federal facility. Noble again violated the conditions of his supervision by using drugs once in January 1992 (he was arrested but the USPC decided not to revoke his parole and released him from custody) and again in May 1993. After the May 1993 violation the USPC issued a warrant for Noble's arrest. He was arrested and his parole was revoked on December 1, 1993.

Although Noble successfully completed a portion of his parole term before his parole was revoked, the USPC, adhering to the policy it had always followed, refused to credit Noble's sentence for the time he served on parole between March 11, 1988 and May 28, 1993. He was reparoled on October 7, 1994 with 1,597 days remaining on his aggregated sentence. Noble then filed the writ of habeas corpus which commenced this litigation.[2]

### II. The Law

After more than three years the case is back before this Court. On remand Noble requests the Court to order the USPC to award him street time credit for the years he served from 1988 to 1993 before his parole was revoked. His request is based on the ex post facto, equal protection and due process clauses and fundamental fairness. Although the parties and the amici submitted voluminous briefs, the Court believes that the issue on remand is a simple one. Prior to *Noble IV*, parolees in the District of Columbia (who had their parole revoked) received different

---

**2.** When this Court granted Nobles' habeas petition in *Noble I* on May 31, 1995, the USPC's supervision authority over Noble ended. The USPC has exercised no authority over Noble since that time and has no information regarding his whereabouts. Thus, Noble still has 1,597 days remaining to be served on his aggregated sentence. *See* Respondent's Brief on Remand p. 7, n. 4.

sentence calculations based on whether they were under the supervision of the USPC or the DCBP. Noble was in the group of District parolees who were treated differently than those under District supervision. He contested the disparity that resulted from the differing interpretations by the DCPB and the USPC regarding §§ 24–206(a) and 24–431(a) and, while he prevailed before this Court, he ultimately lost on appeal. In *Noble IV* the D.C. Court of Appeals held, after reference from the Court of Appeals for the District of Columbia, that the USPC's interpretation was the correct one.

Because Noble always was under the supervision of the USPC, and because the USPC consistently followed § 24–206(a) and did not award credit for street time, Noble had no legitimate expectation of an earlier release date. Therefore, no constitutional implications are raised by the application of *Noble IV* to him. Noble is the very person covered by the decision of the D.C. Court of Appeals. Therefore, he comes within the holding of *Noble IV* and this Court must enforce that holding.

While this Court held in *Noble I* that the District's interpretation of the statutes was the correct and fair one (i.e., that the federal authorities should have been granting credit for street time based on § 24–431(a)), the decision was reversed by the D.C. Court of Appeals in *Noble IV*. This Court must apply and carry out the law and Noble will be held to that standard with no street time credits.

The parties and the amici have raised concerns about the rest of the prison population that will be affected by *Noble IV*. Indeed, the D.C. Court of Appeals flagged the question of "whether there should be any limitation on the class of prisoners the ruling should reach." *Id.*, at 1104. As a matter of logic it is clear that those who are under federal supervision, as Noble was, had no reasonable expectations that they would be granted credit for street time and therefore are bound by *Noble IV*.

As to those who were under District supervision the issue is not so clear. It would seem that those inmates had the right to rely on the District's practice of granting credit for street time as pronounced in 28 D.C.M.R. § 601.7. There is nobody before the Court who has standing to litigate this issue. This is not a class action and the Court can rule only on issues that affect the parties before it. However, since the broader issue was fully briefed and argued, to assist the parties the Court did make clear at the December 9, 1998 hearing that in its opinion the District should not apply *Noble IV* retroactively to those who were under D.C. supervision from 1987 to April 23, 1998.[3] That group clearly has the right to rely on the District of Columbia's prior interpretation of its own laws. To prevent this Court from being swamped with petitions from those who fall in this group, the Court urges counsel for the District of Columbia to issue a release indicating that it would honor its past interpretation for the 1987 to April 23, 1998 period. For the reasons set forth above, Matthew Noble's request is denied.

---

**3.** In May 1998 the District of Columbia Department of Corrections issued a "Notice To All Inmate [sic]," stating, in part, that "[t]he Noble decision means that the Bureau of Prisons and the D.C. Department of Corrections are obligated to correct their erroneous sentence calculations by withdrawing credit for all times [sic] spent on parole. In the cases [sic] of any such inmate currently serving a sentence that includes an unexpired D.C.Code parole violation term, this recalculation will have the effect of establishing new full term and mandatory release dates for these inmates." *See* Ex. 1 to Respondent's Brief on Remand.